# In the United States District Court
# for the District of Colorado

Civil Action No. _____

LUIS QUEZADA,

    Plaintiff,

v.

TED MINK, in his official capacity as the Sheriff of Jefferson County, Colorado

    Defendant.

**COMPLAINT AND JURY DEMAND**

## Introduction

1. In May 2009, Plaintiff Luis Quezada was arrested for failing to appear in court on a traffic ticket. He was taken to the Jefferson County Jail. When he went to court a few days later, he was sentenced to time served on the traffic violation. By May 29, 2009, Defendant Mink's legal authority to detain Mr. Quezada had expired. Nevertheless, Defendant Mink continued to hold Mr. Quezada in the Jefferson County Detention Facility, depriving him of his liberty, without legal authority, for approximately 47 additional days. Mr. Quezada seeks compensation for the unconstitutional deprivation of his liberty.

## Jurisdiction and Venue

2. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the laws of the State of Colorado. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All parties reside within the District of Colorado, and the events described in this Complaint occurred in the District of Colorado.

### Parties

4. Plaintiff Luis Quezada resides in Colorado.

5. Defendant Ted Mink is the Sheriff of Jefferson County, Colorado. Defendant Mink is sued in his official capacity. Defendant Mink operates the Jefferson County Detention Facility ("JCDF"). He is responsible for formulating policies applicable to the jail and detention of prisoners. He is also responsible for the acts and omissions of his agents and employees at JCDF.

6. At all times relevant to this Complaint, Defendant Mink acted or failed to act under color of state law.

### Factual Allegations

#### A. ICE Detainers

7. The immigration laws of the United States are enforced by the Immigration and Customs Enforcement Agency ("ICE") of the Department of Homeland Security ("DHS"). When ICE investigates whether to initiate removal proceedings against a noncitizen or suspected noncitizen who is held in the custody of a state or local law enforcement agency, ICE issues Immigration Detainers, citing as authority 8 C.F.R. § 287.79.

8. ICE issues Immigration Detainers on Form I-247. The form states that "Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours

2

(excluding Saturdays, Sunday's [*sic*] and Federal holidays) to provide adequate time for DHS to assume custody of the alien."

9.  In a letter dated November 7, 2008, the American Civil Liberties Union of Colorado wrote to Defendant Mink. The letter advised that the ACLU had received numerous complaints regarding local law enforcement agencies misinterpreting or misapplying the law related to ICE detainers. The letter explained that when the 48-hour period expires without ICE having assumed custody of a detainee who is subject to an Immigration Detainer, then the individual must be released promptly.

10. The letter also requested, under Colorado's open records laws, Defendant Mink's written policies and procedures regarding Immigration Detainers.

11. On February 26, 2009, an attorney from the Jefferson County Attorney's Office responded by telephone on behalf of Defendant Mink. The response stated Defendant Mink had no such policies or procedures.

### B.  Luis Quezada's Arrest and Detention

12. On May 23, 2009, officers from the Lakewood Police Department arrested Mr. Quezada on a warrant for failure to appear in court on a traffic violation.

13. Mr. Quezada was taken to the JCDF and booked into the jail.

14. On that same day, ICE faxed an Immigration Detainer, Form I-247, to the JCDF. The Immigration Detainer named Mr. Quezada and stated that "Investigation has been initiated to determine whether this person is subject to removal from the United States."

15. The Immigration Detainer cited 8 C.F.R. § 287.7 and stated that JCDF was required to detain Mr. Quezada "for a period not to exceed 48 hours (excluding Saturdays, Sunday's [*sic*] and Federal holidays) to provide adequate time for DHS to assume custody."

16. On the morning of Tuesday, May 26, 2009, Mr. Quezada appeared in Jefferson County Court to answer for his traffic violation. The judge sentenced Mr. Quezada to time served and ordered that he be released from custody. The county court's order terminated Defendant Mink's legal authority to hold Mr. Quezada for his traffic violations or for his failure to appear in court. Defendant Mink's only colorable authority for continuing to detain Mr. Quezada was the I-247 form, the Immigration Detainer. The Detainer at most authorized Defendant Mink to hold Mr. Quezada for an additional 48 hours.

17. On May 26, 2009, shortly after the court ordered Mr. Quezada's release, the JCDF faxed a notice to ICE stating "SUBJECT IS READY FOR PICK-UP."

18. ICE did not take custody of Mr. Quezada within 48 hours. By May 29, 2009, any authority to continue detention under the Immigration Detainer had expired. It was Defendant Mink's legal duty to release Mr. Quezada immediately.

19. Nevertheless, Defendant Mink continued to imprison Mr. Quezada, without legal authority, for approximately 47 days: during the remainder of May, during the entire month of June, and until the middle of July, 2009.

20. During this 47-day detention, both Mr. Quezada and his family members protested to JCDF employees that he was entitled to release. JCDF employees responded to Mr. Quezada's complaints by stating that he would remain in the jail until ICE picked him up. During this 47-day detention, Mr. Quezada was not facing any charges under the federal

4

immigration laws or under any state law.  He had no opportunity to appear before a judge to seek his release or to learn the reason why he was deprived of his liberty.  He had no opportunity to post bond.

21. On July 14, 2009, ICE agents assumed custody of Mr. Quezada and took him to the ICE Aurora Contract Detention Facility in Aurora, Colorado.  On that date, ICE agents also served Mr. Quezada with a Notice to Appear before an immigration judge.  The Notice to Appear provided that Mr. Quezada could be released by posting a $5,000 bond.  He promptly posted the bond and was released.

### C. Defendant Mink's Liability

22. Defendant Mink is responsible for establishing procedures, policies, training, and practices that ensure that every individual held in the JCDF is promptly released when the legal authority to hold the individual expires.

23. In the absence of such policies and procedures, there is an obvious risk that persons held in the JCDF will be detained beyond the time that they are legally entitled to release.

24. Defendant Mink failed to develop any such policies and procedures for ensuring that persons held on Immigration Detainers are released if ICE does not assume custody within the 48-hour period (excluding weekends and holidays) specified in 8 C.F.R. § 287.7.

25. On information and belief, when jail inmates are named in Immigration Detainers, it is the custom and standard practice of the Jefferson County Detention Facility to hold those inmates past the expiration of the 48-hour period described in 8 CFR § 287.7 when ICE fails to take custody of those inmates within the 48-hour period.

26. On October 15, 2009, Plaintiff Quezada, by and through his attorneys, timely notified Jefferson County and the Jefferson County Sheriff's Office by serving a notice of claim on the Jefferson County Attorney pursuant to the Colorado Governmental Immunity Act, C.R.S. § 24-10-109.

## FIRST CLAIM FOR RELIEF
### (Fourth, Eighth, and Fourteenth Amendments; 42 U.S.C. § 1983)

27. The foregoing allegations are incorporated by reference.

28. Mr. Quezada was deprived of his liberty without legal authority, in violation his right to be free of unreasonable searches and seizures; his right to be free of cruel and unusual punishment, and his right to due process of law.

29. Defendant Mink's procedures, policies, customs, and practices, including his deliberately indifferent failure to establish adequate procedures, policies, supervision, and training, caused Mr. Quezada's injuries and the violations of his constitutional rights.

30. Mr. Quezada is entitled to compensatory damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other relief the Court deems just.

## SECOND CLAIM FOR RELIEF
### (False Imprisonment)

31. The foregoing allegations are incorporated by reference.

32. Defendant Ted Mink and his agents and employees intended to restrict Mr. Quezada's freedom of movement by not releasing him from custody at the JCDF on May 29, 2009.

33. Mr. Quezada's freedom of movement was restricted for approximately 47 days, either directly or indirectly, by Defendant Ted Mink and his agents and employees at JCDF.

34. Mr. Quezada was aware that his freedom of movement was restricted during his unlawful detention at JCDF.

35. As a direct and proximate result of this false imprisonment, Plaintiff suffered injuries and damages including:

    a. Loss of physical liberty;

    b. Emotional pain, suffering and trauma, humiliation, and embarrassment.

### THIRD CLAIM FOR RELIEF
**(Negligence)**

36. The foregoing allegations are incorporated by reference.

37. After any colorable legal authority to detain Mr. Quezada ended on May 29, 2009, Defendant Ted Mink and his agents and employees unlawfully detained Mr. Quezada in the jail at the JCDF.

38. Defendant Ted Mink and his agents and employees owed a duty to Mr. Quezada to exercise reasonable care to not imprison him without legal authority.

39. Defendant Ted Mink and his agents and employees breached that duty by unlawfully detaining Mr. Quezada for approximately 47 days.

40. As a result of the negligence of Defendant Ted Mink and his agents and employees, Mr. Quezada suffered injuries and damages including:

    a. Loss of physical liberty;

    b. Emotional pain, suffering and trauma, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

    A.    Compensatory damages;

    B.    An award of reasonable attorney's fees and costs, pursuant to 42 U.S.C § 1988 and any other applicable law;

    C.    Pre-judgment interest and post-judgment interest on any award of damages to the extent permitted by law; and

    D.    Any additional relief the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

Dated:  April 21, 2010.

                                      Respectfully submitted,

                                      */s/ Daniel D. Williams*
                                      Daniel D. Williams
                                      Faegre & Benson LLP
                                      1900 Fifteenth Street
                                      Boulder, CO  80302-5414
                                      Phone:  (303) 447-7741
                                      Fax: (303) 447-7800
                                      Email: dwilliams@faegre.com

/s/ Mark Silverstein
Mark Silverstein
Legal Director
American Civil Liberties Union Foundation of Colorado
400 Corona Street
Denver, Co 80218
Phone: 303-777-5482
Fax:  303-777-1773
Email:  msilver2@att.net

Kirk M. Neste
Faegre & Benson LLP
1700 Lincoln Street, Suite 3200
Denver, CO  80203-4532
Phone:  (303) 607-3580
Fax: (303) 607-3600
Email: kneste@faegre.com

Taylor Pendergrass
American Civil Liberties Union Foundation of Colorado
400 Corona Street
Denver, Co 80218
Phone:  303-777-5482
Fax:  303-777-1773
Email:  tpendergrass@aclu-co.org

Omar C. Jadwat
(application for admission forthcoming)
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone:  (212) 549-2660
Fax:  (212) 549-2654 (fax)
Email:  OJadwat@aclu.org

Attorneys for Plaintiff

fb.us.5124107.03