IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-00879-REB-KLM

LUIS QUEZADA,

    Plaintiff,

v.

TED MINK, in his official capacity as the Sheriff of Jefferson County, Colorado;
JOHN LONGSHORE, in his individual capacity as Director of the ICE Denver Field Office;
JASON CLEMENS, in his individual capacity as Immigration Enforcement Agent in ICE's Denver Field Office;
BRET R. TALBOT, in his individual capacity as Immigration Enforcement Agent in ICE's Denver Field Office;
KELLI SAYERS, in her individual capacity as Immigration Enforcement Agent in ICE's Denver Field Office;
WAYNE RICHARDSON, in his individual capacity as an employee in ICE's Denver Field Office;
JEFF JENKINS, in his individual capacity as an employee in ICE's Denver Field Office;
EDDIE SANCHEZ, in his individual capacity as an employee in ICE's Denver Field Office; and
SHANNON SANTOS, in his individual capacity as an employee in ICE's Denver Field Office,

    Defendants.
_____

## ORDER ON MOTION TO QUASH SUBPOENA
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on an oral Motion to Quash Subpoena filed by non-party United States Department of Homeland Security ("DHS").  For the reasons set forth below, the Motion is **GRANTED.**

### I. Procedural History

    In general, Plaintiff asserts that he was unlawfully detained in the Jefferson County,

Colorado jail for forty-seven days after serving time on a state-law traffic violation. *Second Amended Complaint* [#46][1] at 1. Defendant Ted Mink, the Sheriff of Jefferson County ("the Sheriff"), contends that Plaintiff was detained after the state-law charges against him were resolved "as a federal contract inmate for [the United States Immigration and Customs Enforcement agency] ("ICE")." The Sheriff further contends that he "has no authority under [the County's] contract with ICE to release federal contract inmates; only the federal entity responsible for that federal inmate . . . has the authority to release its own inmates. Thus, to the extent [Plaintiff] has a claim for overdetention or false imprisonment, those claims should have been asserted against ICE, not the Sheriff." *Scheduling Order* [#19] at 4.

Plaintiff asserts claims against the Sheriff, the Denver Field Office Director of the ICE Office of Detention and Removal Operations, three Immigration Enforcement Agents and four DHS employees based on 42 U.S.C. § 1983, state tort law, and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 430 U.S. 388, 395-97 (1971). *Second Amended Complaint* [#46] at 5-25.

In July of 2010, the Sheriff served deposition subpoenas duces tecum on three non-party ICE Agents: Jason Clemens, Captain Kuhl and John Longshore [Docket No. 41-2].[2] DHS refused to authorize either their appearance for deposition or the production of the requested documents, citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-70 (1951), among other reasons [Docket Nos. 41-3 & 41-5]. When the parties were unable

---

[1] #46 is an example of the abbreviation I use to refer to pleadings which have been docketed in this case pursuant to the Court's electronic filing system. The Second Amended Complaint is pleading number 46 and was filed with the Court on September 14, 2010.

[2] According to DHS's brief, all three are employees of DHS, not ICE. *DHS's Brief* [#41] at 1.

2

to resolve their differences pursuant to the Local Rules, DHS sought to quash the subpoenas [Docket No. 36] ("Motion to Quash").[3]  I ordered the parties to brief the issue, and they did so.  *See Sheriff's Brief* [#40]; *DHS's Brief* [#41].

Plaintiff subsequently moved to amend his Complaint and to add two of the three subpoenaed DHS employees, John Longshore and Jason Clemens, as Defendants in the case [Docket No. 44].  The Motion to Amend was granted [Docket No. 47].  Pursuant to the Court's Order, the Sheriff then filed a Status Report conceding that the subpoenas for Agents Longshore and Clemens had become moot as a result of those individuals' addition as Defendants in the lawsuit.  However, the parties apparently agreed that "the issue regarding the application of DHS's *Touhy* regulations to the Agent Kuhl subpoena . . . must still be decided by this Court."  *Status Conf.* [#49] at 4.  Finally, DHS filed a Notice of Superseding *Touhy* Decision on September 29, 2010. [Docket No. 50].  I have read the parties' submissions, researched the applicable law, and am fully advised in the premises.

## II.  The Parties' Arguments

In support of its Motion to Quash, DHS argues that this Court has repeatedly quashed subpoenas when a party seeks information from a federal agent who is not a party to the case and who has not been authorized to testify, pursuant to the *Touhy* doctrine.  In *Touhy,* the United States Supreme Court held that pursuant to a federal "Housekeeping Act," federal executive agencies may promulgate regulations which control the release of agency documents in response to a subpoena.  *Touhy*, 340 U.S. at 468.  According to DHS, its *Touhy* regulations require consideration of several factors in evaluating how to

---

[3]  The Motion to Quash was made orally, in compliance with my discovery procedures.

respond to a subpoena, including whether compliance would be unduly burdensome to the agency, the need to conserve the time of Department employees for the conduct of official business, and the need to avoid spending time and money of the United States for private purposes. DHS argues that it properly weighed these factors and determined that "production of the information sought in the subpoenas would likely require a substantial expenditure of ICE resources which would be unduly burdensome to ICE"; the information sought is subject to privileges, is overly broad and "may seek expert testimony prohibited by 6 C.F.R. § 5.49"; and appearance for deposition would take undue time of the employee away from conduct of official business and expend ICE resources for private litigation. *DHS's Brief* [#41] at 8. DHS asserts that sovereign immunity precludes compelling an employee to provide evidence in violation of the agency's *Touhy* decision, and the proper way for the Sheriff to challenge DHS' decision is to bring an action pursuant to the Administrative Procedure Act. *Id.* at 12-19. Finally, DHS asserts that even if the Court abandons previous jurisprudence and examines the Department's *Touhy* decision under an arbitrary and capricious standard, its decision to defy the subpoena is justified because the Sheriff "now has additional potential means for discovery through [the two agents who have been made] parties and . . . should be required to exhaust such party discovery before burdening a nonparty with discovery requests." *Notice of Superseding Touhy Decision* [#50] at 2.

The Sheriff argues that despite frequent recitation of the *Touhy* doctrine in federal jurisprudence, the decision has been severely undercut by more recent and perceptive federal court decisions which hold that "non-party federal agencies must produce evidence in response to subpoenas of private litigants, subject only to the court's discretionary right

4

to limit burdensome discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure." *Sheriff's Brief* [#40] at 13. More specifically, the Sheriff cites a 2007 decision of the District of Columbia Circuit Court of Appeals ("D.C. Circuit") as demonstrative of this thinking. In *Watts v. SEC*, the Court held that "an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45. An agency's *Touhy* regulations are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007) (citations omitted). Further, "[a] challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel (or an agency's Rule 45 motion to quash). . . . Rule 45 also supplies the standards under which district courts assess agency objections to a subpoena." *Id.* at 508. The Sheriff urges this Court to adopt the reasoning of the D.C. Circuit and overrule DHS's objections to the subpoena on the basis of Rules 26 and 45 of the Federal Rules of Civil Procedure.

### III. Analysis

Although there is limited case law in the Tenth Circuit regarding application of the *Touhy* doctrine, there is little room to doubt that the doctrine is alive and well here. I have read the cases from other jurisdictions cited by the Sheriff, and I agree that "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994) (quoting *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953)). I see no principled reason, statutory or otherwise, "to hold that federal courts cannot compel federal officers to give factual testimony," *id.* at 778-79 (citing *Northrop v. McDonnell Douglas Corp.*, 751 F.2d 395, 398

n.2 (D.C. Cir. 1984)), as those officers should be "subject to the same rule of law that governs other mortals and [should] not be heard to refuse to testify to facts and opinions within [their] ken." *U.S. Steel Corp. v. Mattingly*, 89 F.R.D. 301, 302 (D. Colo. 1980), *rev'd*, 663 F.2d 68 (10th Cir. 1980). Nevertheless, I am duty bound to follow applicable precedent from this Circuit. Such precedent indicates that the Kuhl subpoena is not enforceable, at least not at this procedural juncture, pursuant to the *Touhy* doctrine.

In *Touhy*, the Supreme Court considered whether a subordinate official of the Department of Justice ("DOJ") could refuse to obey a subpoena duces tecum ordering production of DOJ documents in his possession. The official's refusal was based on a DOJ regulation authorized pursuant to 5 U.S.C. § 22, which is commonly referred to as the Housekeeping Act. The Court held that the Attorney General could validly withdraw from his subordinates the power to release department papers, and that the official could properly refuse to produce those papers pursuant to a subpoena duces tecum. *Touhy*, 340 U.S. at 467-68.

The relatively few decisions on *Touhy* in the Tenth Circuit reveal more than the usual consternation about the broad impact of the doctrine. The Court's decisions on the subject can be construed as reluctantly enforcing the federal government's ability to thwart the ordinary discovery process by "administrative fiat." *Mattingly*, 89 F.R.D. at 304. For example, the Tenth Circuit first addressed the issue of whether a non-party federal official could be compelled to respond to a subpoena duces tecum which had been issued in litigation between private parties in *Saunders v. Great W. Sugar Co.*, 396 F.2d 794 (10th Cir. 1968). In *Saunders*, local Small Business Administration ("SBA") officials appealed from a District Court order compelling them to respond to subpoenas after SBA officials had

declined to allow disclosure of the information sought pursuant to SBA regulations. Despite expressing reservations about "[t]he requirement on litigants to proceed only in the District of Columbia to obtain relief from agency action denying disclosure,"[4] the Court directed the aggrieved party to proceed to adjudicate the agency's claim of privilege in that court, pursuant to *Touhy*. *Id.* at 795. But the Court also stated as follows:

> The defendants . . . assert that the requested information is relevant and important to them. The plaintiff. . . concedes relevancy but says that the information will be cumulative. In the circumstances the defendants are entitled to disclosure unless governmental privilege forbids. *Some remedy must be afforded*. We interrogated at length the attorney for the government whether the proper SBA official, if subpoenaed in the District of Columbia, would defend on any ground other than privilege and received the positive assurance that he would not. . . . We assume the proper SBA official in the District of Columbia can be reached by legal process and that the claim of privilege can be promptly determined there.

*Id.* (emphasis added).

Perhaps taking the lead from the manifest discomfort expressed by the Tenth Circuit in *Saunders*, former District Judge Jim Carrigan of this Court subsequently held that the "Housekeeping Act" construed in *Touhy* "provides no authority whatsoever for [a federal agency] to restrict the availability of evidence in a judicial proceeding or to confer a testimonial privilege on its employees or records." *Mattingly*, 89 F.R.D. at 304. The case arose from "the explosion or rupture of a large steel cylinder manufactured by" United States Steel Corp. ("USS"), an event which "killed two men, injured four others, and damaged property." *Id.* at 302. An employee of the National Bureau of Standards wrote an accident report "with findings and conclusions adverse to USS." The Court held that

---

[4] At that time, applicable statutes required such actions to be filed in the District of Columbia. *See* 28 U.S.C. §§ 1361, 1391(e). The statutes have since been amended. *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650.

the report would be admissible at trial, and USS subpoenaed its author, who was instructed by the agency's legal advisor not to comply with the subpoena. USS moved to compel compliance with the subpoena.

Judge Carrigan addressed the legislative history of the Housekeeping Act, and noted that "the purpose of [the 1958] amendment was to prevent government administrators and other bureaucrats from using the statute as a basis for withholding information." *Id.* He distinguished *Saunders* on the basis that the plaintiff there had argued that the information sought would be cumulative, and that no such factor was present in the case before him. Finally, he considered "fundamental fairness," and determined that it would be "egregiously unfair to deny [the requesting party] an opportunity to confront and cross-examine its accuser, to question his qualifications to render the opinion stated, to learn the facts on which his conclusions were based and test whether he mistakenly based conclusions on incorrect factual information, and to discover any prejudice which might undermine his credibility." *Id.* at 304. Accordingly, he ordered the author of the report to appear for a deposition.

In a very brief order, the Tenth Circuit reversed, simply concluding that "the merits of this dispute are controlled by" *Touhy,* and that the court "erred in enforcing the subpoena." *U.S. Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980) ("*Mattingly II*"). The message of *Mattingly II* has been heeded by District Courts in the Tenth Circuit ever since. In *Smith v. C.R.C. Builders Co., Inc.*, 626 F. Supp. 12 (D. Colo. 1983), this Court rejected the argument that "*Touhy* is outdated and no longer the law in light of a post-*Touhy* amendment" to the Housekeeping Act. Instead, the Court held that "the long-established rule that a superior government official [can] withdraw from his subordinates the power to

release government documents" remains intact.  *Id.* at 14.

In *Kansas v. Call*, 961 F.2d 220 (table) (10th Cir. 1992), the Tenth Circuit affirmed an order of the District Court for the District of Kansas which held that a state court lacked jurisdiction to compel subpoenaed DEA agents to testify, pursuant to *Touhy*.

In *Oklahoma v. Hopkins*,162 F.3d 1172 (table) (10th Cir. 1998), the Tenth Circuit declined to enforce a subpoena served on an FBI agent for the purpose of defending against state criminal charges.  The Court held, pursuant to *Touhy*, that "a subordinate federal employee acting pursuant to agency direction cannot be required to release information absent authorization by his superior."  *Id.*  The Court further pointed out that the requesting party had "other remedies available," including "an action in federal court pursuant to the Administrative Procedure Act."  *Id.*

In  *Haithcox v. GEO Group, Inc.*, No. 07-cv-00160, 2008 WL 2487913, at *1-2 (D. Colo. June 16, 2008) (unpublished decision), this Court quashed a subpoena served on a DHS employee based on invalidity of service and application of the agency's *Touhy* regulations.

In *Colorado v. Rodarte*, No. 09-cv-02912, 2010 WL 924099, at *2-3 (D. Colo. Mar. 9, 2010) (unpublished decision), this Court quashed a subpoena previously enforced by a state court against an FBI agent.  The Court held, pursuant to *Touhy*, that the agent could not be required by the state court to release information in the absence of authorization from a superior, which had not been provided.  *Id.* at *2.  The Court explained that the appropriate means for challenging an agency's decision under *Touhy* is "an action under the Administrative Procedure Act in federal court."  *Id.* (citing *In re Elko County Grand Jury,* 109 F.3d 554, 557 n.1 (9th Cir. 1997)).

This line of authority makes clear that this Circuit has interpreted *Touhy* to allow federal officials to limit subordinates' authority to produce documents or provide testimony pursuant to duly-enacted regulations. Although the Sheriff disputes the viability of the *Touhy* doctrine in light of ample criticism (from commentators and courts alike), he does not dispute that DHS's refusal to allow Agent Kuhl to testify results from its application of its duly-enacted regulations. As such, *Touhy* prohibits enforcement of the subpoena at this juncture. Although both efficiency and economy are compromised by the requirement of a separate claim brought pursuant to the Administrative Procedure Act, that is what the law of this Circuit requires. As no such claim is raised in this lawsuit, I decline the parties' invitation to engage in an analysis of whether DHS's decision not to allow responses to the subpoena pursuant to its regulations was "arbitrary and capricious," and leave that analysis to another day under appropriate circumstances.

### IV. Conclusion

For the reasons set forth above, the Motion to Quash is **GRANTED** and the subpoena duces tecum served on Captain Kuhl is **quashed**.

Dated: November 3, 2010

                                               BY THE COURT:

                                               s/ Kristen L. Mix
                                               United States Magistrate Judge
                                               Kristen L. Mix