IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-CV-879-REB-KLM

LUIS QUEZADA,

Plaintiff

v.

TED MINK, Sheriff of Jefferson County Colorado, in his official capacity,
JOHN LONGSHORE, Director of the ICE Denver Field Office, in his individual capacity,
JASON CLEMENS, Immigration Enforcement Agent in ICE's Denver Field Office, in his individual capacity,
BRET R. TALBOT, Immigration Enforcement Agent in ICE's Denver Field Office, in his individual capacity,
KELLI SAYERS, Immigration Enforcement Agent in ICE's Denver Field Office, in her individual capacity,
WAYNE RICHARDSON, employee in ICE's Denver Field Office, in his individual capacity,
JEFF JENKINS, employee in ICE's Denver Field Office, in his individual capacity,
EDDIE SANCHEZ, employee in ICE's Denver Field Office, in his individual capacity, and
SHANNON SANTOS, employee in ICE's Denver Field Office, in his individual capacity.

Defendants.

---

**DEFENDANT JEFFERSON COUNTY SHERIFF TED MINK'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON MOTION TO QUASH SUBPOENA**

---

Defendant Jefferson County Sheriff Ted Mink ("Sheriff Mink"), by and through counsel, hereby objects to the Magistrate Judge's Order on Motion to Quash Subpoena [Docket No. 69] pursuant to F.R.C.P. 72(a). In support of this Objection to the Order on Motion to Quash Subpoena, Sheriff Mink states as follows:

## FACTUAL BACKGROUND

The Sheriff incorporates the Background section of his Response to Immigration and Customs Enforcement's Motion to Quash [Docket No. 40], pages 1 through 5.

## PROCEDURAL BACKGROUND

On August 20, 2010, non-party the United States Department of Homeland Security ("DHS") made an oral motion to quash subpoenas served by Sheriff Mink upon non-parties who were agents and employees of the federal Immigration and Customs Enforcement Agency ("ICE"). See Courtroom Minutes / Minute Order dated August 20, 2010 [Docket No. 36]. The Hon. United States Magistrate Judge Kristen L. Mix instructed DHS and Sheriff Mink to brief the issue of whether a federal agency's administrative *Touhy* regulations may serve as a substantive bar to third-party subpoenas issued by a federal court pursuant to F.R.C.P. 45. See id. Sheriff Mink submitted his brief on the issue on September 1, 2010 [Docket No. 40], as did DHS [Docket No. 41]. On November 3, 2010, Magistrate Judge Mix entered a nondispositive pretrial order [Docket No. 69] granting DHS' oral motion to quash Sheriff Mink's subpoenas to the individual ICE agents. Sheriff Mink now respectfully requests that the Court set aside Magistrate Judge Mix's Order on Motion to Quash Subpoena pursuant to F.R.C.P. 72(a).

## ARGUMENT

Magistrate Judge Mix's Order on Motion to Quash Subpoena expressed her agreement with Sheriff Mink's argument that "'judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.'" Order on Motion to

Quash Subpoenas [Docket No. 69] at 5 (quoting Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 778 (9th Cir. 1994) (further citation omitted)). Magistrate Judge Mix could "see no principled reason, statutory or otherwise, 'to hold that federal courts cannot compel federal officers to give factual testimony'…, as those officers should be 'subject to the same rule of law that governs other mortals and [should] not be heard to refuse to testify to facts and opinions within their ken.'" Id. at 5-6 (citing Exxon Shipping Co., supra at 778-79; Northrop v. McDonnell Douglas Corp., 751 F.2d 395, 398 n. 2 (D.C. Cir. 1984); U.S. Steel Corp v. Mattingly, 89 F.R.D. 301, 302 (D. Colo. 1980), rev'd, 663 F.2d 68 (10th Cir. 1980)). However, Magistrate Judge Mix determined that a series of Tenth Circuit and District of Colorado cases prevented her from denying DHS' Motion to Quash. Id. at 6-10.

The Court should set aside Magistrate Judge Mix's Order on Motion to Quash Subpoena because the Tenth Circuit and District of Colorado cases upon which the Order was grounded are premised upon a fundamental misconstruction of the impact of a 1958 amendment to the Housekeeping Act, 5 U.S.C. § 301 (previously codified at 5 U.S.C. § 22).

## I. THERE IS NO "HOUSEKEEPING PRIVILEGE"

The Supreme Court's decision in U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416 (1951) [hereinafter, "Touhy"], upon which DHS' Motion to Quash Subpoenas and the cases cited within Magistrate Judge Mix's Order were grounded, considered whether internal regulations at the United States Department of Justice ("DOJ"), authorized by the Housekeeping Act, could provide a subordinate official at the DOJ

grounds to refuse to obey a subpoena duces tecum ordering the production of DOJ documents in his possession. Touhy, 340 U.S. at 467-68. The Supreme Court held that the Attorney General could withdraw from his subordinates the power to release DOJ papers and that the official could refuse to produce those papers pursuant to a subpoena duces tecum. Id.

The reading of the Housekeeping Act to provide authority to federal agencies to create internal regulations to prevent disclosure of documents or testimony when an agency decides that disclosure is against the public interest "created no small stir among the public, which was angered by these attempts to govern 'by executive fiat and whimsical claims of executive privilege' under Touhy-like regulations." Gregory S. Coleman, Note, Touhy and the Housekeeping Privilege: Dead but not Buried?, 70 TEX. L. REV. 685, 687-88 (1992) [hereinafter, "Coleman"] (citing EEOC v. Los Alamos Contractors, Inc., 382 F. Supp. 1373, 1378 (D.N.M. 1974)). "In 1958, Congress attempted to address the misunderstanding of the housekeeping statute by amending it to make clear that the statute does not authorize withholding information." William Bradley Russell, Jr., Note, A Convenient Blanket of Secrecy: The Oft-Cited but Nonexistent Housekeeping Privilege, 14 WM. & MARY BILL RTS. J. 745, 753 (Dec. 2005) [hereinafter, "Russell"] (citing H.R. Rep. No. 1461, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 3352 [hereinafter, "H.R. Rep. No. 85-1461"]). "The amendment added one sentence to the statute: 'This section does not authorize withholding information from the public or limiting the availability of records to the public.'" Russell, supra, at 753 n. 48 (citing H.R. Rep. No. 85-1461 at 3353). "By this,

the Congress attempted to return the housekeeping statute to its original intent." Russell, supra, at 753 n. 49 (citing H.R. Rep. No. 85-1461 at 3352).

"Citing the opinions of 'legal experts', the [House] Report notes that the original purpose [of the Housekeeping Act] was not concealment and it cites the withholding of information in litigation as an example of the misapplication of the statute that the bill was designed to correct." 26A Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5682 (1st ed.) (citing H.R. Rep. No. 85-1461 at 3352, 3353, and 3357).

> It has been written that the 1958 amendment eliminated the housekeeping privilege, and that the only vestige of the doctrine left is an agency's procedural discretion to determine when to assert a privilege. While those positions follow logically the 1958 amendment, most courts that have addressed the issue have not recognized the demise of the Touhy doctrine. Indeed, time has shown that although the 1958 amendment "knocked the judicially sanctioned prop out from under the bureaucratic privilege claims," it has done little to stem the tide of claims of Touhy privilege flowing from government agencies. Most, if not all, commentators agree that the amendment was intended to abrogate the de facto privilege that had arisen under various housekeeping regulations. The proposition for which Touhy is often cited-that a government agency may withhold documents or testimony at its discretion-simply is not good law and hasn't been since 1958.

Russell, supra, at 753-54 (quoting Coleman, supra, at 685) (further citations omitted).

The Fifth Circuit, considering the effects of the 1958 amendments to the Housekeeping Act, held in 1961 that

> [The Housekeeping Act] cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority. It cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged. Had there been any doubt of this before, the doubt was

> removed by the amendment of 5 U.S.C.A. § 22 in 1958 making explicit the fact that the section does not of itself create a privilege.

N.L.R.B. v. Capitol Fish Co., 294 F.2d 868, 875 (5th Cir. 1961).

Senior Circuit Judge Phillips of the Fourth Circuit, citing this same history, noted as follows in 1998:

> [The Housekeeping Act] was intended only to allow agencies to regulate their internal procedures for receiving and processing demands…for access to information in their files. It was not intended to confer on an agency or any of its officials the substantive authority either to withhold information as a matter of absolute discretion or to promulgate and assert any form of executive privilege against disclosure. While the regulations at issue may therefore validly prescribe enforceable procedures for presenting and internally processing such demands, they may not go further and lay down substantive grounds for their denial, either as a matter of unreviewable discretion or as a matter of qualified privilege. To the extent they purport to do the latter, they are invalid. This is borne out by the text and legislative history of § 301, by judicial interpretations, and by the opinion of leading commentators.
>
> The last sentence of § 301 speaks directly to the point: "This section does not authorize withholding information from the public or limiting the availability of records to the public." It was added by a 1958 amendment to § 301's precursor, 28 U.S.C. § 22 (1952), for the avowed purpose of counteracting perceived abuses by the executive branch which, it was believed, had "twisted [the statute] from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public," and by interpreting the statute as a broad grant of substantive authority to withhold information, had "let every file clerk become a censor." H.R.Rep. No. 1461, 85th Cong., 2d Sess. 1 (1958).
>
> Courts carefully attending this "Housekeeping" Statute's legislative history have so construed it, some in the process holding invalid agency regulations claimed to confer substantive non-disclosure rights or privileges.

Smith v. Cromer, 159 F.3d 875, 889 (4th Cir. 1998) (Phillips, J., dissenting) (citations omitted).

However, it appears the Tenth Circuit is among those courts which have thus far failed to recognize that the *Touhy* doctrine has not been good law since 1958. As Magistrate Judge Mix noted in her Order, "[t]he relatively few decisions on *Touhy* in the Tenth Circuit reveal more than the usual consternation about the broad impact of the doctrine. The Court's decisions on the subject can be construed as reluctantly enforcing the federal government's ability to thwart the ordinary discovery process by 'administrative fiat.'" Order on Motion to Quash Subpoena [Docket No. 69] at 6 (citing Mattingly, 89 F.R.D. at 304). The Court should recognize that prior Tenth Circuit and District of Colorado precedent has failed to take the 1958 Congressional evisceration of the so-called "housekeeping privilege" into consideration in declining to quash third-party subpoenas served on Federal agencies and employees.

In other jurisdictions, the Federal Government has repeatedly admitted that there is no "housekeeping privilege" under Touhy. See, e.g., Kwan Fai Mak v. FBI, 252 F.3d 1089, 1092 (9th Cir. 2001) ("As the government acknowledged at oral argument, the [*Touhy*] regulations do not 'create an independent privilege' authorizing the Department of Justice to withhold information.") (citation omitted); Carter v. High Country Mercantile, Inc., 2009 WL 2244753, *2 (W.D. Mo. 2009) (unpublished opinion)[1] ("During the telephone conference, the USDA seemed to take the position that the regulation, alone, provided it with all the authority it needed to bar compliance with the subpoena. Subsequent briefing suggests this position has been abandoned, as the USDA now states 'Courts have held that neither 5 U.S.C. § 301 nor *Touhy* regulations confer on an

[1] All unpublished opinions cited herein are attached hereto as **Exhibit A-1**.

agency a privilege or immunity against providing testimony.'"');[2] Robbins v. Wilkie, 289 F.Supp.2d 1307, 1311 (D. Wyo. 2003) ("Defendants [federal employees] state that, 'While *Touhy* regulations cannot be used as a blanket shield from producing documents or testimony, agencies surely have the right to restrict access and preserve valuable government assets, whether they be time or documents.'").

While the Supreme Court has not ruled definitively on this issue, it strongly indicated in 1979 that there is no "housekeeping privilege." In Chrysler Corp. v. Brown, 441 U.S. 281, 310, 99 S.Ct. 1705, 1721, 60 L.Ed.2d 208 (1979), the Supreme Court examined the Housekeeping Act and held that it does not provide statutory authority for substantive regulations. After a brief historical analysis of the provision, the Court wrote:

> Given this long and relatively uncontroversial history, and the terms of the statute itself, it seems to be simply a grant of authority to the agency to regulate its own affairs.... It is indeed a "housekeeping statute," authorizing what the APA terms "rules of agency organization, procedure or practice" as opposed to "substantive rules."

Id. at 309-10, 99 S.Ct. at 1721-22. "In so ruling, the Court noted that Congress had looked carefully at the statute in 1958, that the Special Subcommittee on Government Information had 'unanimously agreed that [§ 301] originally was adopted in 1789 to provide for the day-to-day office housekeeping in the Government departments,' and

---

[2] Even those Circuits which have declined to enforce third-party federal subpoenas on the Federal Government have stated there is no "housekeeping privilege." See, e.g., Comsat Corporation v. National Science Foundation, 190 F.3d 269, 277 (4th Cir. 1999) ("[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the [Federal] Government's power to refuse compliance with a subpoena.") (citation omitted).

that attempts to construe it as something more was 'misuse' which 'twisted' the statute." U.S. ex rel. O'Keefe v. McDonnell Douglas Corp., 132 F.3d 1252, 1255 (8th Cir. 1998) (quoting Chrysler Corp., 441 U.S. at 310 n. 41, 99 S.Ct. at 1722 n. 41 (quoting H.R.Rep. No. 85-1461 at 7 (1958)) (alterations in original)).

With the widespread agreement that no "housekeeping privilege" exists in federal jurisprudence, "courts and commentators have begun to recognize the erosion of the policies underlying the *Touhy* rule." Joseph v. Fluor Corp., 2010 WL 797840, 3 (E.D. La. 2010) (unpublished opinion) (citing Coleman, supra). While the Fifth Circuit recognized the impact of the amendment to the Housekeeping Act as early as 1961, the *Touhy* doctrine lived on in many jurisdictions until the Ninth Circuit decided Exxon Shipping Co. v. U.S. Dept. of Interior in 1994. In Exxon Shipping, Exxon sought to compel discovery requests against federal administrative agencies and their employees as part of its defense in an underlying action arising out of the Exxon Valdez oil spill, actions in which the federal government was not a party. Exxon Shipping Co., supra, at 775. The government, pursuant to its *Touhy* regulations, instructed eight federal employees not to submit to depositions and restricted the testimony of two others. Id. The district court found that the Housekeeping Act authorized the agencies' actions and that the actions were not arbitrary or capricious under the APA. Id. On appeal, the Ninth Circuit reversed. Id. In its reasoning, the Ninth Circuit referenced the 1958 amendment to the Housekeeping Act (discussed infra), specifically noting that the "proposed amendment would 'correct' a situation that had arisen in which the executive branch was using the housekeeping statute as a substantive basis to withhold

information from the public." Id. at 777 (citing H.R. Report No. 85-1461 at 3353). The court therefore found that "neither the statute's text, its legislative history, nor Supreme Court case law supports the government's argument that [the Housekeeping Act] authorizes agency heads to withhold documents or testimony from federal courts." Exxon Shipping Co., supra, at 778 (noting that "[e]very commentator we are aware of who has addressed the issue has reached the same conclusion.") (further citations omitted).

The Ninth Circuit's Exxon Shipping decision appears to have signaled a sea change in courts of appeals' analysis of federal government agencies' assertion of the so-called "*Touhy* privilege." See, e.g., In re Bankers Trust Company, 61 F.3d 465, 470 (6th Cir. 1995), cert. dismissed, 517 U.S. 1205, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996) ("Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information."); Watts v. SEC, 482 F.3d 501, 508-509 (D.C. Cir. 2007) ("[A]n agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden associations under Rule 45. An agency's *Touhy* regulations are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena."); Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 62 (1st Cir. 2007) ("[T]he Touhy regulations are only procedural, and do not create a substantive entitlement to withhold information. Thus, the FBI's compliance with the regulations cannot be a sufficient justification for withholding requested materials. Instead, our review of the

reasonableness of the agency's decision focuses on the substantive law concerning privilege…").

The Court should therefore find that there is no "housekeeping" or *Touhy* privilege upon which a Federal agency or employee may refuse to respond to a properly-served subpoena issued by a Federal court and that Magistrate Judge Mix's Order on Motion to Quash Subpoena was incorrectly based on such a privilege.

## II. SOVEREIGN IMMUNITY DOES NOT BAR THE ENFORCEMENT OF SUBPOENAS ISSUED BY A FEDERAL COURT

The second ground upon which DHS based its arguments in its Motion to Quash was the sovereign immunity of the United States government. See DHS Brief on Motion to Quash [Docket No. 41] at pp. 12-14. The Court should find that sovereign immunity does not bar the enforcement of subpoenas served upon Federal agencies or employees.

In considering the waiver of sovereign immunity, the Tenth Circuit, citing the Administrative Procedure Act, has held that "[a]n action in a court of the United States seeking relief other than money damages ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States." Robbins v. U.S. Bureau of Land Management, 438 F.3d 1074, 1080 (10th Cir. 2006) (quoting 5 U.S.C. § 702). The Tenth Circuit has "recognized that this language 'waive[s] sovereign immunity in most suits for nonmonetary relief' against the United States, its agencies, and its officers." Robbins, supra (quoting Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005) (footnote omitted)). Here, the subpoena directed to the ICE Agents does not

seek monetary damages. The Court should therefore find that DHS' sovereign immunity is waived and cannot form a defense to the Sheriff's subpoenas.

A number of other Circuit Courts of Appeal have reached the conclusion that sovereign immunity cannot serve as a bar to a third-party subpoena issued by a Federal court to a Federal agency or employee. The Ninth Circuit in Exxon Shipping Co. rejected the federal government's sovereign immunity argument in relation to its *Touhy* regulations, an argument that "the authority of agency heads to conclusively determine whether government employees may testify is 'at bottom' controlled by principle of sovereign immunity." Exxon Shipping Co., supra, at 778. "The limitations on a state court's subpoena and contempt powers stem from the sovereign immunity of the United States and from the Supremacy Clause. Such limitations do not apply when a *federal* court exercises its subpoena power against federal officials." Id. (quoting In re Recalcitrant Witness Richard Boeh v. Daryl Gates, 25 F.3d 761, 770 (9th Cir. 1994) (Norris, J., dissenting) (emphasis in original)).

The Ninth Circuit correctly noted that, "under the government's argument, sovereign immunity would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena. Such a broad definition would raise serious separation of powers questions." Exxon Shipping Co., supra, at 778. "As the Supreme Court has said, 'judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.'" Id. (quoting United States v. Reynolds, 345 U.S. 1, 9-10, 73 S.Ct. 528, 532-33, 97 L.Ed. 727 (1953)). With this in mind, the Ninth Circuit "decline[d] to

hold that federal courts cannot compel federal officers to give factual testimony." Exxon Shipping Co., supra, at 778-79 (citing Northrop, supra, at 398 n. 2 (declining to "graft onto discovery law a broad doctrine of sovereign immunity")).

The D.C. Circuit has similarly concluded that "federal agencies cannot…claim sovereign immunity to avoid compliance with third-party subpoenas." Linder v. Calero-Portocarrero, 251 F.3d 178, 180 (D.C. Cir. 2001). "[S]overeign immunity does not insulate the federal government from complying with a Rule 45 subpoena, because in federal court the government has waived its sovereign immunity for actions 'seeking relief other than money damages' in 5 U.S.C. § 702." Id. at 181 (citing Houston Business Journal, Inc. v. Office of the Comptroller, 86 F.3d 1208, 1212 (D.C. Cir. 1996)).

This case, unlike many of the cases cited by Magistrate Judge Mix, is not one in which a litigant attempts to enforce a state court subpoena (or a federal subpoena upon removal from state court) served on a Federal agency or employee. In such situations, sovereign immunity does serve as a bar to enforcement of the subpoena. See, e.g., Boron Oil Co. v. Downie 873 F.2d 67, 70 (4th Cir. 1989) ("[T]he state court (and the federal court on removal) lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction."); State of Louisiana v. Sparks, 978 F.2d 226, 234-35 (5th Cir. 1992) ("There is no indication that the United States Government has waived its sovereign immunity with respect to the state court subpoenas..."); Edwards v. United States Dep't of Justice, 43 F.3d 312, 316 (7th Cir. 1994) ("[T]he state is without jurisdiction to independently compel the testimony or production of documents when it is

contrary to a valid [federal] agency regulation."); Swett v. Schenk, 792 F.2d 1447, 1451-52 (9th Cir. 1986); State v. Rodarte, 2010 WL 924099 at *2 (D. Colo. 2010) (unpublished opinion) ("As defendant Rodarte correctly points out, the 'only issue presented by this removal action is whether this Court, based on derivative jurisdiction, can compel the F.B.I. to disclose the information sought by the defendants' subpoenas.' … The Court agrees that the state court had no authority to compel production of the FBI documents in question.") (citing In re Elko County Grand Jury, 109 F.3d 554, 556 (9th Cir. 1997)).

Here, a Federal court litigant is attempting to enforce a subpoena issued by a Federal court. The relief sought is non-monetary in nature. The Court should therefore find that sovereign immunity does not bar enforcement of Sheriff Mink's subpoenas to the ICE agents.

## III. A SEPARATE ADMINISTRATIVE PROCEDURE ACT LAWSUIT IS NOT NECESSARY

Because sovereign immunity does not bar enforcement of the subpoenas in this matter, the Court should find that Magistrate Judge Mix's Order was contrary to law when it held that a separate claim brought pursuant to the Administrative Procedure Act is necessary to contest ICE's decision to not comply with Sheriff Mink's subpoenas. See Watts v. SEC, supra, at 508 ("[A] challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel (or an agency's Rule 45 motion to quash)…Rule 45 does not set forth a different standard for testimonial subpoenas issued under Rule 45 to an agency or agency employee (nor would it be logical to apply a different standard)."); Exxon

Shipping Co., supra, at 779 (applying Rule 45 standard to third-party testimonial subpoenas directed to federal agency employees). The Court should therefore hold that Sheriff Mink's subpoenas to the federal employees may be enforced pursuant to F.R.C.P. 45 and not through a collateral APA action, which would be "costly, time-consuming, inconvenient to litigants, and may 'effectively eviscerate[]' any right to the requested testimony." Id. at 780 n. 11 (citing In re Recalcitrant Witness Boeh, supra, at 770 n. 4 (Norris, J., dissenting)).

## CONCLUSION

WHEREFORE, Defendant Sheriff Mink respectfully requests that this Court set aside Magistrate Judge Mix's Order on Motion to Quash Subpoena pursuant to F.R.C.P. 72(a) and enter an Order denying the Department of Homeland Security's Motion to Quash.

Respectfully submitted this 16th day of November 2010.

ELLEN G. WAKEMAN
JEFFERSON COUNTY ATTORNEY

*s/ James L. Burgess*
By: ______________________
James L. Burgess
Assistant County Attorney
100 Jefferson County Pkwy., Ste. 5500
Golden, Colorado 80419
Telephone: (303)271-8932
Email: jburgess@jeffco.us

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **DEFENDANT JEFFERSON COUNTY SHERIFF TED MINK'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON MOTION TO QUASH SUBPOENA** was filed this 16th day of November, 2010, via the ECF Filing System, which will send a true and correct copy via email to the following:

Mark Silverstein
Rebecca Teitelbaum Wallace
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO
400 Corona Street
Denver, Colorado 80218
Email: msilver2@att.net
Email: rtwallace@aclu-co.org

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Email: Ojadwat@aclu.org

Kirk M. Neste
Jeffrey S. Roberts
Daniel D. Williams
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203-4532
Email: kneste@faegre.com
Email: jsroberts@faegre.com
Email: dwilliams@faegre.com

Timothy Bart Jafek
U.S. Attorney's Office - Denver
1225 17th Street East
Seventeenth Street Plaza
#700
Denver, CO 80202
Email: timothy.jafek@usdoj.gov

*s/ Deborah Hokanson*

Deborah Hokanson, Paralegal