**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-00879-REB-KLM

LUIS QUEZADA,

      Plaintiff,

v.

TED MINK, Sheriff of Jefferson County, Colorado, in his official capacity
JOHN LONGSHORE, Director of the ICE Denver Field Office, in his individual capacity,
JASON CLEMENS, Immigration Enforcement Agent in ICE's Denver Field Office, in his
      individual capacity,
BRET R. TALBOT, Immigration Enforcement Agent in ICE's Denver Field Office, in his
      individual capacity,
KELLI SAYERS, Immigration Enforcement Agent in ICE's Denver Field Office, in her
      individual capacity,
WAYNE RICHARDSON, employee in ICE's Denver Field Office, in his individual
      capacity,
JEFF JENKINS, employee in ICE's Denver Field Office, in his individual capacity,
EDDIE SANCHEZ, employee in ICE's Denver Field Office, in his individual capacity,
SHANNON SANTOS, employee in ICE's Denver Field Office, in his individual capacity,
      and
the UNITED STATES OF AMERICA.

      Defendants.

---

**THIRD AMENDED COMPLAINT AND JURY DEMAND**

---

**Introduction**

      1.    On May 23, 2009, Plaintiff Luis Quezada was arrested for failing to appear

in court on a traffic ticket.   He was taken to Jefferson County Detention Facility

("JCDF").   When he went to court a few days later, he was sentenced to time served on

the traffic violation.   By May 28, 2009, any legal authority of Defendant Ted Mink, Sheriff

of Jefferson County, to detain Mr. Quezada had expired.   Nevertheless, Defendant Mink

continued to hold Mr. Quezada in the JCDF for 47 days, without any legal authority to do so, and without providing Mr. Quezada any legal process whatsoever.

2.     Defendant Mink claims he continued to detain Mr. Quezada after the state-law charges against him were resolved at the request of the United States Immigration and Customs Enforcement agency ("ICE").   But Defendant Mink had received no legally valid requests from ICE to detain Mr. Quezada beyond May 28, 2009, at the latest.   Yet, Defendant Mink continued to detain Mr. Quezada for approximately 47 additional days, without notice of any charges against him (there were none), without any opportunity to be considered for release on bond, and without any other legal process of any kind.   Mr. Quezada seeks compensation for this unconstitutional deprivation of his liberty.

3.     Mr. Quezada likewise brings <u>Bivens</u> claims against the ICE officers and employees with responsibility for his illegal detention.   These federal officials left Mr. Quezada to languish in a county jail for over 47 days without a warrant for his arrest, without notice of any charges against him (there were none), without any opportunity to be considered for release on bond, and without any other legal process of any kind.

4.     Mr. Quezada asserts claims of false imprisonment and negligence against the United States.   The United States left Mr. Quezada to languish in a county jail for over 47 days without a warrant for his arrest, without notice of any charges against him (there were none), without any opportunity to be considered for release on bond, and without any other legal process of any kind.

5.     This unlawful detention by Sheriff Mink and the ICE officers and employees violated Mr. Quezada's Fourth, Fifth, and Fourteenth Amendment rights under the U.S Constitution and constitutes false imprisonment and negligence under Colorado state law.

## Jurisdiction and Venue

6.     This action arises under the Constitution and laws of the United States, including 28 U.S.C. § 2671–80, 42 U.S.C. § 1983, and the laws of the State of Colorado.

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1346, and 1367.

8.     Mr. Quezada has complied with the jurisdictional pre-requisites for claims under the Federal Tort Claim Act.   Pursuant to 28 U.S.C. § 2675, Mr. Quezada presented his administrative claim to the Department of Homeland Security on September 16, 2010.   The Department of Homeland Security denied Mr. Quezada's administrative claims by letter dated November 22, 2010.

9.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. §§ 1391(b) & (e).   All parties reside within the District of Colorado, and the events described in this Complaint occurred in this District.

## Parties

10.     Plaintiff Luis Quezada resides in Colorado.

11.     Defendant Ted Mink is the Sheriff of Jefferson County, Colorado. Defendant Mink is sued in his official capacity.  Defendant Mink operates the JCDF and

is the final policymaker for JCDF.  He is responsible for formulating policies applicable to the jail and detention of prisoners, including policies to ensure that the detention of inmates housed at JCDF is lawful under the United States Constitution and applicable statutes.  Defendant Mink is also responsible for training and supervising his staff to ensure that the detention of inmates housed at JCDF is lawful under the United States Constitution and applicable statutes.  At all times relevant to this Complaint, Defendant Mink acted or failed to act under color of state law.

12.    Defendant John Longshore is the Field Office Director of the Denver Field Office for the ICE Office of Detention and Removal Operations, located at 12445 E. Caley Avenue, Centennial, CO 80111.   He is responsible for formulating and implementing policies applicable to the ICE Denver Field Office's detention of prisoners, including policies to ensure that those inmates housed at ICE's request at JCDF are detained pursuant to and in accordance with federal regulations, and that their detention does not violate the United States Constitution.   Defendant Longshore is also responsible for training and supervising his staff to ensure that those inmates held at ICE's request at JCDF are detained pursuant to and in accordance with federal regulations and that their detention does not violate the U.S. Constitution.  At all times relevant to this Complaint, Defendant Longshore acted or failed to act under color of federal law.  Defendant Longshore is sued in his individual capacity.

13.    Defendants Jason Clemens, Bret R. Talbot, and Kelli Sayers are Immigration Enforcement Agents in ICE's Denver Field Office located at 12445 E. Caley Avenue, Centennial, CO 80111.  These ICE officers each made requests to the JCDF

that Sheriff Mink detain Mr. Quezada, thereby causing Mr. Quezada's illegal detention. At all times relevant to this Complaint, Defendants Clemens, Talbot and Sayers acted or failed to act under color of federal law.   These Defendants are sued in their individual capacity.

14.   Defendants Wayne Richardson, Jeff Jenkins, Eddie Sanchez, and Shannon Santos are employees of ICE working in ICE's Denver Field Office located at 12445 E. Caley Avenue, Centennial, CO 80111.   These ICE officers received daily or nearly daily reports from JCDF alerting them to Mr. Quezada's long-term, illegal detention.   Nonetheless, these Defendants took no action to: (1) initiate the steps in ICE procedures that would result in the provision of legal process to Mr. Quezada; or (2) terminate Mr. Quezada's detention.   At all times relevant to this Complaint, Defendants Richardson, Jenkins, Sanchez and Santos acted or failed to act under color of federal law.   These Defendants are sued in their individual capacities.[1]

15.   Defendant United States is liable for Mr. Quezada's personal injuries arising or resulting from the negligent or wrongful acts and omissions of any employee or officer of the Department of Homeland Security who was acting within the scope of his or her office or employment.

### Factual Allegations

### A.   ICE Immigration Detainers

16.   The immigration laws of the United States are enforced by ICE, an agency of the United States Department of Homeland Security.   When ICE investigates whether

---

[1]      Defendants Longshore, Clemens, Talbot, Sayers, Richardson, Jenkins, Sanchez, and Santos are collectively referred to herein as "ICE Defendants."

to initiate removal proceedings against a noncitizen or suspected noncitizen who is held in the custody of a state or local law enforcement agency, ICE frequently issues Immigration Detainers.

17.     ICE issues Immigration Detainers on Form I-247.  The form states that "Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sunday's [*sic*] and Federal holidays) to provide adequate time for DHS to assume custody of the alien."

18.     In a letter dated November 7, 2008, the American Civil Liberties Union of Colorado wrote to Defendant Mink.  The letter advised that the ACLU had received numerous complaints regarding local law enforcement agencies misinterpreting or misapplying the law related to ICE detainers.  The letter explained that when the 48-hour period expires without ICE having assumed custody of a detainee who is subject to an Immigration Detainer, then the individual must be released promptly.

19.     The letter also requested, under Colorado's open records laws, Defendant Mink's written policies and procedures regarding Immigration Detainers.

20.     On February 26, 2009, an attorney from the Jefferson County Attorney's Office responded by telephone on behalf of Defendant Mink.  The response stated Defendant Mink had no such policies or procedures.

21.     The Jefferson County Sheriff's Office subsequently produced in this litigation a copy of the Sheriff's Office's policies and procedures relating to Immigration Detainers.  This document is inconsistent with Jefferson County's earlier representation under the Colorado records laws that no such policies and procedures existed.

**B.      The IGSA Between Defendant Mink and the United States Marshals Service**

22.      Defendant Mink, on behalf of the Jefferson County Sheriff's Office, entered into an Intergovernmental Services Agreement ("IGSA") with the United States Marshals Service on August 23, 2007.  Under the terms of the IGSA, the United States Marshals Service and other federal agencies, including ICE, house federal detainees at the JCDF in exchange for payment.

23.      The IGSA mandated that "[a]t all times, the Federal Government shall have access to the facility and to the federal detainees housed there."

24.      "Federal detainees" are defined in the IGSA as "individuals sentenced or charged with federal offenses and detained while awaiting trial or sentencing awaiting designation and transport to a [Bureau of Prisons] facility, a hearing on their immigration status, or deportation."

25.      The IGSA specifically provided that the Jefferson County Sheriff's Office agreed "to accept federal detainees only upon presentation by a law enforcement officer of the Federal Government with proper agency credentials."

**C. Luis Quezada's Arrest and Detention**

26.      On Saturday, May 23, 2009, Mr. Quezada was arrested by an officer from the Lakewood Police Department for failure to appear in court for a prior traffic citation.

27.      Mr. Quezada was booked into the JCDF at approximately 9:10 a.m. on Saturday, May 23, 2009.  About an hour later, the Jefferson County Sheriff's Office notified ICE's Denver Field Office of Mr. Quezada's arrest by faxing an "ICE Inquiry Form" at 10:14 a.m.

28.     Prior to receiving a response from ICE, at 11:54 a.m. that morning, the JCDF then faxed to ICE a notification that Mr. Quezada was "ready for pickup" by ICE.

29.     About five minutes later, at 11:59 a.m., Defendant Bret R. Talbot—an Immigration Enforcement Agent in the Denver Field Office—sent an Immigration Detainer, Form I-247, to the JCDF.

30.     The Immigration Detainer named Mr. Quezada and stated that "Investigation has been initiated to determine whether this person is subject to removal from the United States."   The Immigration Detainer stated that JCDF was required to detain Mr. Quezada "for a period not to exceed 48 hours (excluding Saturdays, Sunday's [sic] and Federal holidays) to provide adequate time for DHS to assume custody."

31.     At 1:13 p.m., JCDF personnel e-mailed ICE and stated that Mr. Quezada was "no longer ready for pick-up" because a cash surety had revoked a bond for Mr. Quezada's release.

32.     Notwithstanding the notification that Mr. Quezada remained in detention on state charges, Defendant Jason Clemens, another Immigration Enforcement Agent in the Denver Field Office, faxed the JCDF an I-203 form at 1:31 p.m. that afternoon. Upon information and belief, an I-203 form is used by ICE agents to request a local law enforcement agency with whom ICE has an IGSA to detain an individual as a federal detainee under the IGSA.   In the instant case, the I-203 requested that the JCDF detain Mr. Quezada for ICE.   The I-203 form did not specify any time limitation for the detention.

8

33.    Defendant Clemens did not present any credentials to accompany his request that the JCDF detain Mr. Quezada as a federal detainee, as required by the IGSA.  Further, under the clear language of the IGSA, Mr. Quezada was not at any time a "federal detainee," because he was not "sentenced or charged," nor was he "awaiting . . .  a hearing on [his] immigration status."   Despite having actual or constructive knowledge that Mr. Quezada could not be held at JCDF as a federal detainee and that ICE had not secured a warrant for Mr. Quezada's arrest, Defendant Clemens transmitted a fax to JCDF from a remote location with no instructions as to when ICE intended to retrieve Mr. Quezada, no indication of the legal basis for the detention, other than the notation "ICE HOLD" on the I-203 form, and no indication as to when JCDF should release Mr. Quezada should ICE fail to timely take physical custody of Mr. Quezada.

34.    Because Mr. Quezada was never a federal detainee under the terms of the IGSA while being held at JCDF, and because he was being held pursuant to state authority on May 23, 2009, the I-203 form sent that day was a legal nullity and of no legal force or effect.  Nevertheless, pursuant to Defendant Mink's custom, policy and/or actual practice, JCDF detained Mr. Quezada for ICE based on the invalid I-203.

35.    Because Monday, May 25, 2009, was the Memorial Day holiday, Mr. Quezada waited in the JCDF for three days before he appeared in court for his traffic violation.  On the morning of Tuesday, May 26, 2009, the County Court ordered Mr. Quezada to pay a $212.00 fine, sentenced him to time served on the traffic violation, and ordered his release.

36.    The County Court's order terminated Defendant Mink's legal authority to hold Mr. Quezada on state charges.  Given the invalidity of the I-203, Defendant Mink's only colorable authority for continuing to detain Mr. Quezada beyond that time was the I-247 Immigration Detainer.  At most, the Immigration Detainer authorized Defendant Mink to hold Mr. Quezada for an additional 48 hours.

37.    On May 26, 2009, shortly after the court ordered Mr. Quezada's release, the JCDF faxed a notice to ICE stating "SUBJECT IS READY FOR PICK-UP."

38.    ICE did not take custody of Mr. Quezada within 48 hours.  By May 28, 2009, it was Defendant Mink's legal duty to release Mr. Quezada immediately, yet he failed to do so.

39.    Instead, Defendant Mink continued to imprison Mr. Quezada, without colorable legal authority, for approximately 47 days:  during the remainder of May, during the entire month of June, and until the middle of July, 2009.   Throughout that period, Mr. Quezada was denied all constitutionally required legal process, including but not limited to: (1) prompt independent review of whether there was probable cause to detain him; (2) an independent determination, made without unreasonable delay, of whether or not he should be given the opportunity to post bond for his release; (3) notice, without unreasonable delay, of the reason for his detention;  and (4) the opportunity to appear before a judge without unreasonable delay.[2]   That Mr. Quezada was held during these 47 days, without lawful authority or any Constitutionally Required

---

[2] Throughout this Complaint, these four forms of legal process are referred to herein as "Constitutionally Required Legal Process."

Legal Process, occurred pursuant to the customs, policies, practices and/or training and supervision of Defendants Mink and Longshore.

40.     For some or all of the days between May 27, 2009, and July 13, 2009, the Jefferson County Sheriff's Office sent a daily "ICE Fax List" to Defendants Richardson, Jenkins, Sanchez, and Santos informing ICE that Mr. Quezada was being held for ICE and was ready for pickup as of May 26, 2009.  Yet these ICE officials failed to respond to these daily notifications in any way.  They did nothing to ensure that Mr. Quezada would expeditiously be picked up by ICE, an event that presumably would trigger ICE regulations and procedures designed to provide Constitutionally Required Legal Process.  Nor did they take any action to release Mr. Quezada from his illegal detention.

41.     On June 23, 2009, ICE faxed a second Immigration Detainer, Form I-247, to the JCDF, which, like the May 23, 2009 Immigration Detainer, was signed by Defendant Talbot.  Like the first Immigration Detainer, it stated that JCDF was required to detain Mr. Quezada "for a period not to exceed 48 hours (excluding Saturdays, Sunday's [*sic*] and Federal holidays) to provide adequate time for DHS to assume custody."  Defendant Talbot did nothing to ensure that, after 48 hours of detention, Mr. Quezada was either released or picked up by ICE.

42.     ICE did not take custody of Mr. Quezada within 48 hours, and the Jefferson County Sheriff's Office failed to release him when the second 48-hour period expired.

43.     On or about July 11, 2009, ICE agent Kelli Sayers faxed a second Form I-203, again titled "Order to Detain or Release Alien."  This I-203 form requested that the

Jefferson County Sheriff's Office "detain" Quezada for an unspecified period of time, and described the nature of proceedings only as "ICE HOLD." The date is listed as "7/11/2009," and the time is listed as "11:59 p.m."

44.     Finally, on July 14, 2009, ICE agents assumed custody of Mr. Quezada and took him to the ICE Aurora Contract Detention Facility in Aurora, Colorado. On that date, ICE agents finally procured a warrant for Mr. Quezada's arrest and served Mr. Quezada with a Notice to Appear before an immigration judge. The Notice to Appear provided that Mr. Quezada could be released by posting a $5,000 bond. He promptly posted the bond and was released.

45.     During his 47-day detention at JCDF, both Mr. Quezada and his family members protested to JCDF employees that he was entitled to release. JCDF employees responded to these protestations by stating that Mr. Quezada would remain in the jail until ICE picked him up. During his 47-day detention, Mr. Quezada was not facing any charges under the federal immigration laws or under any state law. He did not receive prompt independent review of whether there was probable cause to detain him. He had no opportunity to appear before a judge to seek his release, learn why he was deprived of his liberty, or post a bond.

46.     On October 15, 2009, Plaintiff Luis Quezada, by and through his attorneys, timely notified Jefferson County and the Jefferson County Sheriff's Office by serving a notice of claim on the Jefferson County Attorney pursuant to the Colorado Governmental Immunity Act, C.R.S. § 24-10-109.

### D.  Defendant Mink's Liability

47.     Defendant Mink is responsible for establishing procedures, policies, training, and practices that ensure that every individual held at the JCDF is released unless provided with prompt independent review of whether there is probable cause to detain the individual.  Defendant Mink is also responsible for establishing procedures, policies, training, and practices that ensure that every individual held at the JCDF is promptly released when the legal authority to hold the individual expires.

48.     Upon information and belief, at the time of Mr. Quezada's detention at JCDF, Defendant Mink had established an official custom, policy and/or practice to automatically detain inmates named by ICE on an immigration detainer Form I-247 past the expiration of the 48-hour period described in the detainer, after any legal authority to detain that individual had expired, and without the provision of prompt independent review of whether there is probable cause to detain the individual.

49.     Upon information and belief, at the time of Mr. Quezada's detention at JCDF, Defendant Mink had established an official custom, policy and/or practice to automatically detain individuals at the request of ICE, even when those individuals did not qualify as "federal detainees" under the terms of the IGSA, and when no state charges were pending against those individuals.

50.     At the time of Mr. Quezada's detention at JCDF, Defendant Mink had established an official custom, policy and/or practice that, upon receipt of an I-203 form from ICE, JCDF would hold an inmate indefinitely, until directed by ICE to do otherwise. During this time, pursuant to the custom, policy and/or practice of Defendant Mink,

13

JCDF would continue to hold ICE detainees who had not received prompt independent review of whether there is probable cause to detain the individual.

51.     As a direct result of these customs, policies and/or practices, Mr. Quezada was incarcerated at JCDF for 47 days beyond the 48-hour period set forth in the I-247 Form, without any legal authority to do so, and without Mr. Quezada receiving prompt independent review of whether there was probable cause to detain him.

52.     Defendant Mink failed to establish policies and procedures for his subordinates to prevent them from continuing to detain persons such as Mr. Quezada once more than 48 hours elapsed after issuance of the ICE Detainer.

53.     Defendant Mink failed to establish policies and procedures for his subordinates to prevent them from continuing to detain persons such as Mr. Quezada without prompt independent review of probable cause.

54.     Defendant Mink failed to provide adequate training and/or supervision of his subordinates to ensure that persons held in the JCDF receive prompt independent review of whether there is probable cause to detain the individual and are released after lawful authority to detain the individual had expired.

55.     Defendant Mink's customs, policies, and/or actual practices, or lack thereof, as noted herein, represent a deliberate choice by Defendant Mink to follow a course of action made from among various alternatives, and was a moving force behind Mr. Quezada's unlawful detention.  Further, these policies are not reasonably related to any legitimate governmental objective.

56.    In his actions and inactions noted herein, Defendant Mink acted with deliberate indifference to the known risk that his policies, or lack thereof, described above, could cause ICE detainees at JCDF, such as Mr. Quezada, to be detained potentially indefinitely without prompt independent review of whether there is probable cause to detain the individual.

57.    In light of the duties and responsibility of Defendant Mink to train, supervise and exercise control over JCDF employees who monitor the detention of inmates, the need for scrutiny and specialized training and supervision so as to ensure that inmates held pursuant to an ICE request are not subject to unlawful detention and/or deprived of prompt independent review of probable cause was so obvious, and the inadequacy of the training and supervision provided so likely to result in the violation of the Constitution,  that Defendants Mink's failure to train and supervise amounts to deliberate indifference to the constitutional rights of inmates detained pursuant to an ICE request, including Mr. Quezada.   Further, in the absence of the policies, procedures, training, and practices, noted herein there is an obvious risk that persons held in the JCDF will be detained without the protections afforded by the United States Constitution detailed above, and will be detained beyond the time that they are legally entitled to release.

### E.  Liability of the ICE Defendants

58.    The following federal statutes and regulations apply when ICE investigates, detains, and initiates legal proceedings against persons suspected or accused of being removable from the United States because of violations of the federal

immigration laws.  These statutes and regulations should have guided the actions of the ICE Defendants with respect to their detention of Mr. Quezada.  If ICE had complied with these statutes and regulations, Mr. Quezada would have likely received the Constitutionally Required Legal Process due to him.  By failing to abide by the requirements in these statutes at every turn during Mr. Quezada's 47 day detention, the ICE Defendants knowingly, and/or with deliberate indifference, caused Mr. Quezada to be unlawfully detained for 47 days at JCDF in violation of the United States Constitution.

    a.   Section 236(a) of the Immigration and Nationality Act generally requires a warrant to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States.  <u>See</u> 8 U.S.C. § 1226(a). No ICE officer or employee obtained a warrant for Mr. Quezada's arrest until July 14, 2010, after his detention at JCDF ended.

    b.   Section 287(a)(2) of the Immigration and Nationality Act allows for the arrest of aliens without a warrant only if the officer "has reason to believe that the alien is likely to escape before a warrant can be obtained for his arrest, but the alien shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to . . . remain in the United States."  <u>See</u> 8 U.S.C. § 1357(a)(2).  Because Mr. Quezada was an inmate at the JCDF, there was no threat of his escape before a warrant could be obtained for his arrest on immigration charges.

c.   Even when a suspected alien is properly arrested without a warrant, "the examining officer will refer the case to an immigration judge for further inquiry." 8 C.F.R. § 287.3(b).  "Determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time, whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued."  8 C.F.R. § 287.3(d). Further, an alien arrested without a warrant is to "be advised of the reasons for his or her arrest and the right to be represented."  8 C.F.R. § 287.3(c).

59.   During Mr. Quezada's 47 day detention, none of the ICE Defendants took steps to ensure Mr. Quezada was provided with the legal process required by the foregoing statutes and regulations, as well as the United States Constitution.

60.   Upon information and belief, at the time of Mr. Quezada's detention at JCDF, the ICE Defendants knew, based on ICE's past interactions with JCDF, that JCDF would detain an inmate on an I-247 for longer that the 48 hours noted on the detainer.  They also intended that JCDF would respond to an I-203 by detaining the inmate indefinitely, until further notice from ICE and without the provision of any Constitutionally Required Legal Process until ICE directed JCDF to do otherwise.

61.   Defendant Longshore failed to establish procedures, policies, training, and practices that ensure that his office and his subordinates: (1) request JCDF only detain

inmates when lawful authority exists to detain the individual; and (2) provide JCDF inmates detained in connection with an ICE request with all Constitutionally Required Legal Process.

62.     Upon information and belief, Defendant Longshore established a custom, policy and/or practice of immigration agents in the Denver Field Office issuing I-203 forms routinely within a few hours of being notified that a person subject to an I-247 Detainer is available for pickup by ICE, thereby circumventing and rendering meaningless the 48-hour limitation set forth by regulation with respect to I-247 Immigration Detainers.  These I-203s were issued when ICE had no warrant for the person's arrest, when no charges were pending, and when there was no lawful basis to treat the subject as a federal detainee.  Indeed, under the terms of the IGSA, these individuals, including Mr. Quezada, are plainly excluded from the definition of "federal detainee."  These policies caused Mr. Quezada to be unlawfully detained at JCDF for 47 days.

63.     Likewise, Defendant Longshore failed to provide adequate training and supervision related to the lawful detention of individuals that the ICE Denver field office requests JCDF detain, and the Constitutionally Required Legal Process that ICE owes to those individuals.

64.     In light of the duties and responsibility of Defendant Longshore to train, supervise, and exercise control over ICE Denver Field Office employees who manage, direct, and monitor the detention of inmates at JCDF pursuant to ICE requests, the need for scrutiny and specialized training and supervision so as to ensure that inmates held

pursuant to an ICE request are not subject to unlawful detention or deprived of Constitutionally Required Legal Process, was so obvious, and the inadequacy of the training and supervision provided so likely to result in the violation of the Constitution, that Defendant Longshore's failure to train and supervise amounts to deliberate indifference to the constitutional rights of inmates detained pursuant to an ICE request, including Mr. Quezada.

65.   Defendant Longshore's policies and lack of policies, as well as his failure to train and supervise his subordinates, as described above, represent a deliberate choice by Defendant Longshore to follow a course of action made from among various alternatives, and was a moving force behind Mr. Quezada's unlawful detention.  In the absence of such policies, procedures, training and supervision, there is an obvious risk that officers and employees working in ICE's Denver Field Office will violate the constitutional rights of persons they request to have held at the JCDF.  Thus, in his actions and inactions noted herein, Defendant Longshore acted with deliberate indifference to the known risk that his lack of policies and training, described above, were likely to result in ICE detainees at JCDF, such as Mr. Quezada, being unconstitutionally detained and deprived of Constitutionally Required Legal Process for long periods of time.

66.   For his part, Defendant Clemens is responsible for the violations of Mr. Quezada's constitutional rights because he unlawfully issued an I-203 form on May 23, 2009, requesting that the JCDF detain Mr. Quezada until further notice from ICE, intending that JCDF would accept the form as valid, and failing to: (1) initiate the steps

in ICE procedures that would likely have provided Constitutionally Required Legal Process to Mr. Quezada; or (2) terminate ICE's detention of Mr. Quezada at JCDF. Defendant Clemens did so knowing ICE had no warrant for Mr. Quezada's arrest, knowing that no charges had been filed against Mr. Quezada, without any lawful authority for treating Mr. Quezada as a federal detainee, and without initiating any of the steps to protect Mr. Quezada from unlawful detention, as detailed in the federal statutes and regulations above.  Defendant Clemens' actions and inactions, as described herein caused Mr. Quezada's unconstitutional detention and amounted to deliberate indifference to the known risk of his unlawful detention.

67.   Defendant Talbot unlawfully and intentionally issued a second I-247 form regarding Mr. Quezada on June 23, 2009, requesting that JCDF detain Mr. Quezada for an additional 48 hours well after any lawful authority to detain him had already elapsed. Defendant Talbot knew Mr. Quezada had already been held for 48 hours in May, 2009, for an investigation as to whether to bring immigration charges, because he was the ICE officer who signed the first I-247 form regarding Mr. Quezada on May 23, 2009. Defendant Talbot issued the June 23, 2009, order to detain Mr. Quezada, even though he knew ICE had improperly caused Mr. Quezada to be held for over a month, ICE had no warrant for Mr. Quezada's arrest, and ICE had not filed any charges against Mr. Quezada.   Defendant Talbot is responsible for the violations of Mr. Quezada's constitutional rights because he was aware of Mr. Quezada's unlawful detention at ICE's request and took no actions to rectify it, including but not limited to: (1) initiate the steps in ICE procedures that would likely have provided Constitutionally Required Legal

Process to Mr. Quezada; or (2) terminate ICE's request that JCDF continue detaining Mr. Quezada.  Defendant Talbot's actions and inactions, as described herein caused Mr. Quezada's unconstitutional detention and amounted to deliberate indifference to the known risk of his unlawful detention.

68.     For her part, Defendant Sayers issued a second I-203 form on or about July 11, 2009, requesting that the JCDF detain Mr. Quezada, without any warrant having been issued for Mr. Quezada's arrest and without any charges having been filed against Mr. Quezada.   Defendant Sayers is responsible for the violations of Mr. Quezada's constitutional rights because she issued the second I-203 form without lawful authority, and without taking any steps to: (1) initiate the steps in ICE procedures that would likely have provided Constitutionally Required Legal Process to Mr. Quezada; or (2) terminate ICE's request that JCDF continue detaining Mr. Quezada. Defendant Sayer's actions and inactions, as described herein caused Mr. Quezada's unconstitutional detention and amounted to deliberate indifference to the known risk of his unlawful detention.

69.     For their part, Defendants Richardson, Jenkins, Sanchez, and Santos are responsible for the violations of Mr. Quezada's constitutional rights because they received daily or nearly daily emails with the "ICE Fax List" attached informing them that Mr. Quezada was being held at JCDF and had been ready for ICE pickup since May 26, 2009, yet they failed to take appropriate action.  As the designated recipients of the ICE Fax List, on information and belief these federal officials knew that no warrant had issued for Mr. Quezada's arrest and that no charges were pending against him.

Likewise, on information and belief, these defendants were responsible for taking steps to cause Mr. Quezada to be picked up by ICE, an event that would presumably trigger the ICE procedures designed to ensure the provision of Constitutionally Required Legal Process.  Yet none of these officials took any step to: 1) cause Mr. Quezada to be picked up by ICE; or (2) terminate ICE's request that JCDF continue detaining Mr. Quezada.   Their deliberately indifferent failure to act caused Mr. Quezada's unconstitutional detention.

**FIRST CLAIM FOR RELIEF**
**(Against Defendant Mink—Fourth and**
**Fourteenth Amendments; 42 U.S.C. § 1983)**

70.     The foregoing allegations are incorporated by reference.

71.     Mr. Quezada was deprived of his liberty without legal authority, in violation of his right to be free of unreasonable searches and seizures and his right to due process of law as described in the preceding paragraphs.

72.     Defendant Mink's procedures, policies, customs, and practices, including his deliberately indifferent failure to establish adequate procedures, policies, supervision, and training, as described herein, and including his failure to release Mr. Quezada on or before May 28, 2009, caused Mr. Quezada's injuries and the violations of his Fourth and Fourteenth Amendment rights, as described in the preceding paragraphs.

73.     These policies are not reasonably related to any legitimate governmental objective.

74.     Defendant Mink's 47-day detention of Mr. Quezada without any Constitutionally Required Legal Process shocks the conscience and interferes with rights implicit in the concept of ordered liberty.

75.     Mr. Quezada is entitled to compensatory damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other relief the Court deems just.

## SECOND CLAIM FOR RELIEF
### (Against Defendant Mink—False Imprisonment)

76.     The foregoing allegations are incorporated by reference.

77.     Defendant Mink and his agents and employees intended to restrict Mr. Quezada's freedom of movement by not releasing him from custody at the JCDF on or before May 28, 2009.

78.     Mr. Quezada's freedom of movement was restricted for approximately 47 days, either directly or indirectly, by Defendant Mink and his agents and employees at JCDF.

79.     Mr. Quezada was aware that his freedom of movement was restricted during his unlawful detention at JCDF.

80.     As a direct and proximate result of this false imprisonment, Mr. Quezada suffered injuries and damages including:

      a.     Loss of physical liberty;

      b.     Emotional pain, suffering and trauma, loss of enjoyment of life, humiliation, and embarrassment.

### THIRD CLAIM FOR RELIEF
**(Against Defendant Mink—Negligence)**

81.     The foregoing allegations are incorporated by reference.

82.     After any colorable legal authority to detain Mr. Quezada ended on May 28, 2009, Defendant Mink and his agents and employees unlawfully detained Mr. Quezada in the jail at the JCDF.

83.     Defendant Mink and his agents and employees owed a duty to Mr. Quezada to exercise reasonable care to not imprison him without legal authority and without the provision of any legal process and/or judicial review.

84.     Defendant Mink and his agents and employees breached that duty by unlawfully detaining Mr. Quezada for approximately 47 days.

85.     As a result of the negligence of Defendant Ted Mink and his agents and employees, Mr. Quezada suffered injuries and damages including:

   a.     Loss of physical liberty;

   b.     Emotional pain, suffering and trauma, loss of enjoyment of life, humiliation, and embarrassment.

### FOURTH CLAIM FOR RELIEF
**(Bivens Claims Against the ICE Defendants – Fourth and Fifth Amendments)**

86.     The foregoing allegations are incorporated by reference.

87.     Mr. Quezada was deprived of his liberty without legal authority, in violation of his right to be free of unreasonable searches and seizures and his right to due process of law as described in the preceding paragraphs.

88.     Defendant Longshore's procedures, policies, customs, and practices, including his deliberately indifferent failure to establish adequate procedures, policies, supervision, and training, as described herein, and including his failure to ensure Mr. Quezada's release on or before May 28, 2009, caused Mr. Quezada's injuries and the violations of his Fourth and Fifth Amendment rights, as described in the preceding paragraphs.

89.     These policies are not reasonably related to any legitimate governmental objective.

90.     Defendant Longshore's 47-day detention of Mr. Quezada without any Constitutionally Required Legal Process shocks the conscience and interferes with rights implicit in the concept of ordered liberty.

91.     The ICE Defendants' actions and inactions, as detailed above, caused Mr. Quezada to be deprived of his Fourth Amendment right of unreasonable searches and seizures and his Fifth Amendment right to due process of law.

92.     As a result of his unlawful detention, Mr. Quezada is entitled to compensatory damages, and any other relief the Court deems just.

## FIFTH CLAIM FOR RELIEF
### (Against Defendant United States—False Imprisonment)

93.     The foregoing allegations are incorporated by reference.

94.     Employees and officers of the Department of Homeland Security, acting within the scope and office of their employment, intended to restrict Mr. Quezada's freedom of movement by failing to either release him or otherwise cause his release from custody at the JCDF on or before May 28, 2009.

95.     Mr. Quezada's freedom of movement was restricted for approximately 47 days, either directly or indirectly, by employees and officers of the Department of Homeland Security, acting within the scope and office of their employment.

96.     Mr. Quezada was aware that his freedom of movement was restricted during his unlawful detention at JCDF.

97.     As a direct and proximate result of this false imprisonment, Mr. Quezada suffered injuries and damages including:

   a.      Loss of physical liberty;

   b.      Emotional pain, suffering and trauma, loss of enjoyment of life, humiliation, and embarrassment.

### SIXTH CLAIM FOR RELIEF
### (Against Defendant United States—Negligence)

98.     The foregoing allegations are incorporated by reference.

99.     After any colorable legal authority to detain Mr. Quezada ended on May 28, 2009, employees and officers of the Department of Homeland Security acting within the scope and office of their employment unlawfully caused Mr. Quezada to be detained in the jail at the JCDF.

100.    Employees and officers of the Department of Homeland Security acting within the scope and office of their employment owed a duty to Mr. Quezada to exercise reasonable care not to cause him to be imprisoned without legal authority and without the provision of any legal process and/or judicial review.

101.   Employees and officers of the Department of Homeland Security acting within the scope and office of their employment breached that duty by unlawfully causing Mr. Quezada to be detained for approximately 47 days.

102.   As a result of the negligence of employees and officers of the Department of Homeland Security acting within the scope and office of their employment, Mr. Quezada suffered injuries and damages including:

   a.   Loss of physical liberty;

   b.   Emotional pain, suffering and trauma, loss of enjoyment of life, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

   A.   Compensatory damages;

   B.   An award of reasonable attorney's fees and costs, pursuant to 42 U.S.C § 1988 and any other applicable law;

   C.   Prejudgment interest and post-judgment interest on any award of damages to the extent permitted by law; and

   D.   Any additional relief the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims so triable.


Dated:  December 14, 2010.

Respectfully submitted,


s/ Daniel D. Williams
Daniel D. Williams
Jeffrey S. Roberts
Kirk M. Neste
Faegre & Benson LLP
1900 Fifteenth Street
Boulder, CO  80302-5414
Phone:  (303) 447-7741
Fax: (303) 447-7800
Email: dwilliams@faegre.com
         jroberts@faegre.com
         kneste@faegre.com


s/ Rebecca T. Wallace
Mark Silverstein
Rebecca T. Wallace
American Civil Liberties Union Foundation of
Colorado
400 Corona Street
Denver, Co 80218
Phone: 303-777-5482
Fax:  303-777-1773
Email: msilver2@att.net
         rtwallace@aclu-co.org


Omar C. Jadwat
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone:  (212) 549-2660
Fax:  (212) 549-2654 (fax)
Email:  OJadwat@aclu.org


Attorneys for Plaintiff